IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHARLES A. CAPLE                                                                    PLAINTIFF

        v.                      Civil No. 5:11-cv-05101-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                      DEFENDANT

## MEMORANDUM OPINION

### I.    Factual and Procedural Background

Plaintiff, Charles A. Caple, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed his applications on November 19, 2003, alleging a disability onset date of May 15, 1989,[1] due to arthritis of his knees, hands, and back, irregular heartbeat, a hiatal hernia, gastroesophageal reflux disease ("GERD"), and abdominal pain.  Tr. 10, 60, 63, 69, 73, 78-79.  On the alleged onset date, Plaintiff was thirty-three years old with an eighth grade education.  Tr. 15, 77, 285, 330, 804.  He has no past relevant work.  Tr. 16.

Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 21-26, 32-33, 316-317, 321-325.  At Plaintiff's request, an administrative hearing was held on May 19, 2005.  Tr.

---

[1] Plaintiff originally alleged an onset date of January 2, 1988.  Tr. 12.  However, in a statement filed on November 20, 2003, Plaintiff indicated that he stopped working in May 1989, which was the onset of his disability.  Tr. 12, 46-47.

333-353. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on November 2, 2005, finding Plaintiff was not disabled within the meaning of the Act. Tr. 7-17. Subsequently, the Appeals Council denied Plaintiff's Request for Review on May 26, 2006, thus making the ALJ's decision the final decision of the Commissioner. Tr. 3-6.

On June 27, 2006, Plaintiff filed suit in this court, which ultimately resulted in remand to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), to allow the ALJ to consider new evidence concerning Plaintiff's mental impairments. *Caple v. Astrue*, No. 5:06-cv-05117-JRM (W.D. Ark. May 30, 2007). On February 25, 2008, a second administrative hearing was held. Tr. 801-834. Plaintiff was present at the hearing and represented by counsel. The ALJ rendered an unfavorable decision on May 13, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 359-374. Subsequently, the Appeals Council denied Plaintiff's Request for Review on March 11, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 354-356. Plaintiff now seeks judicial review of that decision.

## II.     Medical History

Plaintiff received routine care at the Veterans Administration Medical Center ("VAMC"). On January 23, 2002, Plaintiff presented to the VAMC in Fayetteville with complaints of chest pain, dysphagia, abdominal pain, and weight loss. Tr. 210-217. Daniel Fineberg, M.D., noted a history suggestive of GERD with possible esophageal stricture resulting in dysphagia. Tr. 213. He prescribed Rabeprazole for GERD symptoms. Tr. 213. An upper abdominal series, dated January 28, 2002, revealed a small sliding type hiatal hernia. Tr. 97.

On February 7, 2002, Plaintiff reported low back pain after injuring his back carrying soda. Tr. 207-210. On examination, Plaintiff had some mild left paraspinal muscle spasms on the left.

Tr. 208. Plaintiff had limited range of motion, particularly with flexion, and a negative straight leg raise. Tr. 208. Dr. Fineberg diagnosed Plaintiff with acute lumbar sprain/strain and prescribed ibuprofen, a steroid injection, and heat therapy. Tr. 208. He instructed Plaintiff to avoid heavy lifting or bending for several days. Tr. 208.

On March 21, 2002, Plaintiff reported abdominal and back pain. Tr. 204-208. On examination, Plaintiff did not demonstrate any difficulty ambulating. Tr. 206. He exhibited mid epigastric tenderness, but no guarding or rebound. Tr. 307. Plaintiff had no tenderness or spasms in his back. Tr. 207. Dr. Fineberg discontinued ibuprofen and Rabeprazole and prescribed Lansoprazole and Tylenol. Tr. 207. On May 30, 2002, Plaintiff underwent an esophagogastroduodenoscopy ("EGD"), which revealed chronic gastroesophageal reflux disease and a possible paraesophageal hernia. Tr. 121-122. On December 4, 2002, Plaintiff was treated for abdominal and low back pain. Tr. 187-192. Alex R. Santiago, D.O., instructed Plaintiff to increase his fiber intake and fluids. Tr. 190. An abdominal ultrasound, dated March 28, 2003, was unremarkable. Tr. 95-96.

On March 23, 2003, Plaintiff reported that he injured his lower back on the left side. Tr. 178. On examination, Plaintiff had full strength in his upper and lower extremities and normal muscle tone. Tr. 180. He was able to forward flex, touch the ground, and bend backwards. Tr. 180. He was able to side bend and rotate within normal limits. Tr. 180. Plaintiff exhibited paravertebral fullness in his left lower lumbar area, with no bony tenderness noted. Tr. 180. He was able to stand from a squatting position without difficulty. Tr. 180. Dr. Santiago instructed Plaintiff to perform range of motion exercises and prescribed ibuprofen, Flexeril, and Darvocet. Tr. 180.

On June 4, 2003, Plaintiff complained of lower back pain, which was mitigated by Flexeril and Darvocet. Tr. 165-169. X-rays of Plaintiff's lumbar spine revealed bilateral pars defects suspected at L5 without associated sponylolisthesis, mild disc space narrowing at L4-5 with moderate disc space narrowing at L5-S1, and small endplate osteophytes at multiple levels. Tr. 94-95. No additional fractures were identified, and vertical bodies and heights were well maintained. Tr. 94. On examination, Plaintiff had full strength in his upper and lower extremities and normal muscle tone. Tr. 168. Plaintiff was able to forward flex, touch his toes, and bend backwards. Tr. 168. Rotation and side bending were within normal range and deep tendon reflexes were normal. Tr. 168. Dr. Santiago instructed Plaintiff to increase his activities as tolerated and avoid heavy pushing, pulling, or lifting. Tr. 169.

On December 5, 2003, Plaintiff reported that Ranitidine and Lansoprazole worked well for his reflux. Tr. 148-153. He also reported using ibuprofen for back pain and Darvocet as needed. Tr. 149. Plaintiff reported that Flexeril helped relieve his occasional back spasms. Tr. 149. On examination, Plaintiff had full strength in his upper and lower extremities and normal muscle tone. Tr. 151. Dr. Santiago instructed Plaintiff to continue taking his medications as prescribed and to start exercising regularly. Tr. 153.

On January 16, 2004, an agency physician completed a Physical Residual Functional Capacity ("RFC") Assessment, in which he determined Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry twenty five pounds, stand/walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 221-228. He found no postural, manipulative, visual, communicative, or environmental limitations. Tr. 223-225.

On March 17, 2004, Plaintiff was treated at VAMC for internal hemorrhoids. Tr. 282-284. On August 12, 2004, Plaintiff reported right occipital pain and muscle spasms. Tr. 269-276. On examination, Plaintiff exhibited right-sided paraspinal tenderness with fullness and slightly decreased range of motion on rotation to the left. Tr. 271-272. Plaintiff had full strength in his upper and lower extremities and normal muscle tone. Tr. 272. Gait was normal and Plaintiff had equal grip strength. Tr. 272. Dr. Santiago recommended range of motion exercises and heat/cold therapy. Tr. 272. He also prescribed Darvocet for pain. Tr. 272.

On December 3, 2004, Plaintiff reported occasional back pain and muscle spasms, but noted that his medication worked well. Tr. 253-257. Dr. Santiago noted that Plaintiff's back pain and GERD were stable and instructed him to continue taking his medications, which included Cyclobenzaprine, Docusate, Hydroxyzine, Omeprazole, Propoxyphene-N100/APAP, and Ranitidine. Tr. 257-258. On March 3, 2005, Plaintiff reported left shoulder pain. Tr. 239-245. Examination revealed full range of motion in both shoulders and slight crepitus with circumduction bilaterally. Tr. 242. X-rays of Plaintiff's left shoulder revealed no evidence of fracture or dislocation. Tr. 232. Dr. Santiago encouraged Plaintiff to avoid heavy lifting, pushing or pulling, and overhead lifting. Tr. 242. He instructed Plaintiff to alternate cold and heat therapy and perform range of motion exercises. Tr. 242. He also prescribed Darvocet and a Medrol dose pack. Tr. 242. On June 3, 2005, Plaintiff reported that his left shoulder pain was somewhat better. Tr. 304-307.

On June 17, 2005, Plaintiff saw Martin T. Faitak, Ph.D., for a consultative psychological evaluation. Tr. 285-288. On examination, Plaintiff was very talkative, unfocused, and easily distracted. Tr. 285. He was very slow to complete tasks due to distractibility and a tendency to provide irrelevant details. Tr. 285. On the Wechsler Adult Intelligence Scale (3rd edition), Plaintiff

received a verbal IQ score of 94, a performance IQ score of 70, and a full-scale IQ score of 82, placing him within the low average range of intellectual functioning. Tr. 286. Plaintiff read on a post-high school level and spelled at a high school level. Tr. 287. However, arithmetic scores were at a fourth grade level. Tr. 287. According to the Beck Depression Inventory 2, Plaintiff experienced minimal depression. Tr. 287. According to the Beck Anxiety Inventory, Plaintiff experienced severe anxiety symptoms. Tr. 287. Dr. Faitak determined Plaintiff would benefit from medication and relaxation training, as well as involvement in a pain management clinic to learn alternative ways to cope with his physical pain problems. Tr. 288. He noted that in a work setting, Plaintiff would be highly likely to alienate others with his own neediness. Tr. 288.

Dr. Faitak also completed a Medical Source Statement ("MSS") of Plaintiff's ability to do work-related activities. Tr. 289-290. He determined Plaintiff had a good ability to follow work rules, interact with supervisors, function independently, and understand, remember, and carry out simple job instructions. Tr. 289-290. He found Plaintiff had a fair ability to relate to coworkers, deal with the public, use judgment, deal with work stresses, maintain attention and concentration, understand, remember, and carry out detailed, but not complex, job instructions, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Tr. 289-290. Dr. Faitak found that Plaintiff had a poor ability to understand, remember, and carry out complex job instructions. Tr. 290. He noted that Plaintiff was limited by anxiety and social immaturity/self focus as well as learning disabilities in arithmetic. Tr. 289-290.

On November 15, 2005, Plaintiff saw Richard Back, Ph.D., for a consultative psychological evaluation. Tr. 328-332. Plaintiff denied a history of inpatient or outpatient psychiatric treatment. Tr. 330. His medications consisted of Flexeril, Omeprazole, and Zantac. Tr. 329. On examination,

Plaintiff was odd and very animated. Tr. 330. He spoke in a sing-song voice and was frequently fidgety, using hand gestures when he spoke. Tr. 330. Plaintiff exhibited flight of ideas, some persecutory thinking, and circumlocution. Tr. 330. Dr. Back noted marked impulsiveness, but no evidence of unusual passivity, dependency, aggression, or withdrawal. Tr. 331. He found that Plaintiff's concentration, persistence, and pace were all good. Tr. 332. Dr. Back diagnosed Plaintiff with chronic pain disorder associated with both psychological factors and a general medical condition, mild mental retardation, and schizotypal personality disorder. Tr. 332. He determined Plaintiff met the requirements for Listing 12.05 (mental retardation). Tr. 328.

On December 19, 2005, Plaintiff presented to VAMC with low back pain, intermittent chest discomfort, dizzy spells, and urinary frequency. Tr. 540-544. On examination, Plaintiff had no tenderness, masses, or effusion on palpation. Tr. 543. He had full range of motion in all joints without crepitus, pain, or limitation. Tr. 543. X-rays of Plaintiff's lumbosacral spine revealed mild lumbar disc space narrowing at L2-3, L3-4, and L4-5. Tr. 552-553. X-rays of Plaintiff's left shoulder were normal. Tr. 553-554. Donald Ewing, M.D., noted that Plaintiff's low back pain was mild and not limiting. Tr. 544. He also found that Plaintiff's dizzy spells appeared to be due to orthostatic hypotension. Tr. 544. He noted possible anxiety vs. somatoform disorder, but Plaintiff declined further evaluation. Tr. 544. Plaintiff was given a Holter monitor to record heart rhythms, which revealed normal results. Tr. 540.

Plaintiff was also evaluated by a urologist. Tr. 531. He was diagnosed with an enlarged prostate with no obstruction and treated with Terazosin and Tamsulosin, which were discontinued due to side effects. Tr. 534-535. He later underwent a cytoscopy on August 3, 2006, and was treated with Finasteride. Tr. 598, 605-606, 612-618, 707-708. On November 6, 2006, Plaintiff reported

doing much better with nocturia and frequency. Tr. 598.

On May 25, 2006, Plaintiff underwent a psychological screening with Jon S. Keller, P.A. Tr. 477-478. Plaintiff denied obvious symptoms of depression and anxiety, and stated that "most days are pretty good." Tr. 478. Mr. Keller found that Plaintiff's mood was neutral and his affect showed good range. Tr. 478. Thought processes were rather concrete and simple, but not grossly disorganized. Tr. 478. Mr. Keller suspected borderline intellectual functioning, but made no psychiatric diagnosis. Tr. 478. He estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 70. Tr. 478.

On June 8, 2006, Plaintiff stated that Flexeril and Darvocet helped wit his various aches and pains. Tr. 503-507. Dr. Santiago noted that Plaintiff's degenerative disc disease was mild and encouraged increased exercise, healthy diet, and smoking cessation. Tr. 507. In July 2006, Plaintiff was treated for abdominal pain and hemorrhoids with Compazine, Psyllium, and Darvocet. Tr. 620-633.

On September 8, 2006, Plaintiff reported neck pain/stiffness and knee pain after mowing the yard, but noted that his pain was gradually improving. Tr. 606. X-rays of Plaintiff's cervical spine revealed possible disc degeneration at C5-6 and C6-7 and possible foraminal stenosis at C6-7 on the left. Tr. 566-567. Dr. Santiago discontinued Darvocet and prescribed Tramadol. Tr. 608. He noted that Plaintiff's GERD was stable on Ranitidine and Omeprazole and his urinary symptoms had improved on Finasteride. Tr. 608.

On January 12, 2007, Plaintiff underwent an echocardiogram, which revealed thickened aortic valve leaflets with mild decrease in aortic valve opening, slight mitral regurgitation, and normal left ventricular ejection fraction close to 70%. Tr. 761-767. A segmental limb pressure test

revealed stiff vessels but no obvious obstruction.  Tr. 762-767.

Beginning in March 2007, Plaintiff reported an increase in back and leg pain.  Tr. 749-761.  On June 8, 2007, Plaintiff reported right-sided low back pain which was aggravated by pushing a lawn mower.  Tr. 743.  Dr. Santiago gave Plaintiff a steroid pain injection in his back.  Tr. 740-745.  On June 27, 2007, Plaintiff reported that the injection did not help his pain level.  Tr. 737.  As a result, Dr. Santiago referred Plaintiff for a physical therapy consultation.  Tr. 718-719.

On July 31, 2007, Plaintiff stated he had been doing his back exercises, but complained of lower back pain that radiated down his right leg.  Tr. 727-729.  On examination, Plaintiff had full strength and normal muscle tone in his upper and lower extremities.  Tr. 728.  He had some discomfort with palpation to his lumbar spine to L4 and mild paraspinal fullness bilaterally.  Tr. 728.  Plaintiff was able to forward flex to twelve inches, bend his knees to four to six inches, and perform backward extension and rotation normally.  Tr. 728.  Plaintiff was able to heel, toe, and tandem walk without difficulty.  Tr. 728.  A CT of Plaintiff's lumbar spine, dated August 16, 2007, revealed generalized articular process hypertrophy and mild degenerative changes in the facet joints and transitional lumbosacral junction with pseudoarthrosis on the right, but no focal disc herniations or spinal stenosis.  Tr. 711-712.  An MRI of Plaintiff's lumbar spine, dated October 23, 2007, revealed mild lumbar spondylosis with annular bulges at L2-3 and L3-4.  Tr. 774-775.  Dr. Santiago instructed Plaintiff to continue with his physical therapy exercises and avoid heavy lifting, pushing, and pulling.  Tr. 729.

On September 27, 2007, Plaintiff underwent a consultative psychological evaluation with Scott McCarty, Ph.D.  Tr. 768-770.  Plaintiff denied feeling depressed, anxious, irritable, or angry.  Tr. 768.  He did not exhibit any remarkable emotional symptomology.  Tr. 768.  He denied a history

of inpatient or outpatient treatment. Tr. 768. On examination, Plaintiff was calm, cooperative, friendly, and jovial. Tr. 769. Plaintiff reported his predominant emotion as "on the upbeat." Tr. 769. Plaintiff's affect was appropriate and congruous with his mood. Tr. 769. Speech was logical, relevant, goal-directed, and organized. Tr. 769. Plaintiff denied suicidal or homicidal ideation. Tr. 769.

Dr. McCarty found that, based on Plaintiff's IQ testing, educational history, nature of prior work, and inability to drive, Plaintiff appeared to be functioning in the mildly mentally retarded range. Tr. 769. He found no criteria for an emotional disorder, and estimated Plaintiff's GAF score at 65-75. Tr. 770. Dr. McCarty noted significant limitation in self-direction and mild limitation in attention and concentration, but found Plaintiff could communicate and interact in a socially adequate manner, cope with the typical mental/cognitive demands of basic work-like tasks, persist at tasks until completion, and complete work-like tasks within an acceptable time frame. Tr. 770. In a MSS, Dr. McCarty found no limitation in Plaintiff's ability to understand, remember, and carry out instructions and interact appropriately with supervision, coworkers, and the public. Tr. 771-773.

On August 12, 2008, Plaintiff underwent a consultative psychological evaluation with Patricia Walz, Ph.D. Tr. 791-800. Dr. Walz reviewed Plaintiff's prior evaluations with Drs. McCarty, Back, and Faitak. Tr. 791. When asked about medications, Plaintiff reported that he only took Tylenol for pain. Tr. 794.

On examination, Plaintiff was hyperactive and talked incessantly. Tr. 794. His mood was anxious and his affect was expansive. Tr. 794. Thought processes were notable for run-on speech and a tendency to ramble. Tr. 794. Dr. Walz diagnosed Plaintiff with somatoform pain disorder, anxiety disorder not otherwise specified, and a nonverbal learning disorder. Tr. 795-796. She

assessed Plaintiff's GAF score at 45-50. Tr. 796. Dr. Walz found that Plaintiff had an "odd presentation" and would likely make others uncomfortable with his constant movement and run-on speech. Tr. 796. She believed Plaintiff would have great difficulty dealing with the public or other coworkers. Tr. 796. Dr. Walz also noted some difficulty with attention, concentration, and persistence, but noted Plaintiff could complete work-like tasks within an acceptable time frame. Tr. 796.

In a MSS, Dr. Walz found marked limitation in Plaintiff's ability to make judgments on complex work-related decisions and interact appropriately with the public. Tr. 798-800. She found moderate limitations in Plaintiff's ability to make judgments on simple work-related decisions, understand, remember, and carry out complex instructions, interact appropriately with supervisors and coworkers, and respond appropriately to usual work situations and changes in a routine work setting. Tr. 798-800. She found mild limitation in Plaintiff's ability to understand, remember, and carry out simple instructions. Tr. 798. Dr. Walz determined Plaintiff would have the most difficulty with nonverbal tasks and tasks which required social skills. Tr. 798.

### III. **Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000)

(citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

IV. **ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since May 15, 1989, the alleged onset date. Tr. 365. At step two, the ALJ found Plaintiff

suffers from arthritis and mood disorder, which were considered severe impairments under the Act. Tr. 365. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 365-366.

At step four, the ALJ found Plaintiff had the RFC to sit for six hours, stand and/or walk for six hours, occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, and push/pull within these same limitations. Tr. 366-372. He found Plaintiff could occasionally climb ladders and scaffolds and crawl, and frequently climb stairs and ramps, balance, kneel, crouch, and stoop. Tr. 366-372. Mentally, the ALJ determined Plaintiff had mild limitations in the ability to understand, remember, and carry out simple instructions, moderate limitations in the ability to make judgments on simple work-related decision, understand, remember, and carry out complex instructions, interact appropriately with supervisors and coworkers, and respond appropriately to usual work situations and routine work changes, and marked limitations in the ability to make judgments on complex work-related decisions and interact with the public. Tr. 366-372.

The ALJ determined Plaintiff had no past relevant work. Tr. 372. After receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[2] Accordingly, the ALJ determined Plaintiff was not under a disability from May 15, 1989, the alleged onset date, through May 13, 2009, the date of the administrative decision. Tr. 373-374.

---

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as small products assembler, of which there are 1,568 jobs in Arkansas and 74,085 jobs nationally, poultry eviscerator, of which there are 4,953 jobs in Arkansas and 45,563 jobs nationally, and machine operator, of which there are 2,150 jobs in Arkansas and 122,375 jobs nationally. Tr. 372-373, 457.

V.     **Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) failing to consider the combined effects of his impairments; (B) improperly assessing his credibility; and (C) improperly determining his RFC. *See* Pl.'s Br. 16-20. For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

At step two, the ALJ determined Plaintiff suffered from severe arthritis and mood disorder. Tr. 365. Plaintiff contends the ALJ failed to consider his diagnoses of anxiety disorder, mild mental retardation, schizotypal personality disorder, and nonverbal learning disorder. *See* Pl.'s Br. 16-17. The undersigned agrees.

In this instance, the ALJ did not properly address Plaintiff's diagnosis of mild mental retardation. The medical evidence clearly establishes that Plaintiff received a performance IQ score of 70 on the WAIS-III, which is consistent with the first prong of Listing 12.05(C).[3] Tr. 286. Moreover, Plaintiff's social and educational history, including special education classes and dropping out of school in the eighth grade, support the notion that Plaintiff's difficulties have been long-standing. *See Maresh v. Barnhart,* 438 F.3d 897, 900 (8th Cir. 2006) (claimant proved that his mental retardation manifested itself before age twenty-two when he struggled in special education classes and dropped out of school); *Muncy v. Apfel,* 247 F.3d 728, 734 (8th Cir. 2001) (IQ is presumed to remain stable over time absent evidence of change in intellectual functioning). Notably, two of four psychologists concluded that Plaintiff suffered from mild mental retardation. Dr. Back

---

[3] Listing 12.05(C) requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., . . . onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). To meet the requirements of Section 12.05(C), a claimant must show: (1) a valid verbal, performance, or full-scale IQ of 60 through 70; and (2) a physical or other impairment imposing an additional and significant work-related limitation of function. *Id.*; *Jones v. Barnhart,* 335 F.3d 697, 699 (8th Cir. 2003).

concluded that Plaintiff was mildly retarded and met the requirements of Listing 12.05(C). Tr. 328. Additionally, Dr. McCarty found that, based on Plaintiff's previous IQ testing, educational history, nature of prior work, and inability to drive, Plaintiff appeared to be functioning within the mildly mentally retarded range. Tr. 769. Neither of these psychologists found any evidence of exaggeration or malingering.

The ALJ discounted Dr. Back's opinion, stating it was inconsistent with his own evaluation and with the medical evidence as a whole. Tr. 370. He also concluded that Plaintiff underwent the examination in an effort to generate evidence for appeal rather than to seek treatment. Tr. 371-372. At no point did the ALJ clearly indicate whether he rejected Plaintiff's objective IQ testing as invalid[4] or whether he simply disagreed with Dr. Back's diagnoses. The ALJ found the opinions of Drs. McCarty and Walz to be more reliable and well supported by the evidence of record. Tr. 372. However, in doing so, the ALJ did not address Dr. McCarty's diagnosis of mild mental retardation, nor did he address Dr. Walz's diagnosis of nonverbal learning disorder. Since it is unclear to what extent the ALJ considered these findings, remand is necessary for further consideration of Plaintiff's mental limitations. On remand, the ALJ should clearly address Plaintiff's diagnosis of mild mental retardation and should consider whether his impairments meet the requirements of Listing 12.05(C).

## VI. Conclusion

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's mental RFC, based on all relevant

---

[4] The WAIS-III is an acceptable means to test for mental retardation. *McGee v. Astrue,* 291 Fed. Appx. 783, 786-787 (8th Cir. 2008) (citing *Bailey v. Apfel,* 230 F.3d 1063, 1065 (8th Cir. 2000)).

evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of her own limitations.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 20th day of August 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE